UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIN JI GOO DYER,<br>Plaintiff,<br>v.<br>CHIKE EZEH, et al.,<br>Defendants. | Case No. 23-cv-01226-WHO<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING CASE WITHOUT PREJUDICE** |

Plaintiff Min Ji Goo Dyer, proceeding *pro se*, brings an action against defendants Chike Ezeh and Mark Tayor for their alleged involvement in an elaborate cryptocurrency scam. *See* First Amended Complaint ("FAC") [Dkt. No. 90]. After Ezeh's failure to answer or appear in this Court, the Clerk entered Ezeh's default. *See* Dkt. Nos. 127–28. Dyer then moved for default judgment. Dkt. No. 129. Magistrate Judge Spero reviewed the motion and recommended denying it and dismissing the case without prejudice for lack of personal jurisdiction. Report and Recommendation ("R&R") [Dkt. No. 138]. Dyer timely filed her objections. Plaintiff's Motion for De Novo Determination ("Objections") [Dkt. No. 140]. Having reviewed the matter de novo, I ADOPT the Report and Recommendation ("R&R") in full and DISMISS this case without prejudice.

**BACKGROUND**

Dyer, a resident of the United Kingdom, is the victim of an alleged cryptocurrency scam. *See* FAC ¶¶ 5, 16. In or around July 2021, she began investing in what she believed was a joint venture with actor and singer Ben Barnes. *Id.* ¶ 12. Unknown to her, Ezeh, a resident of Nigeria, was impersonating Ben Barnes. *Id.* ¶¶ 6, 13. While impersonating Barnes, Ezeh instructed Dyer to invest in the joint venture. *Id.* ¶ 14. Dyer's payments to the purported joint venture exceeded

United States District Court
Northern District of California

$3,000,000. *Id.* ¶ 15.

Ezeh also directed Dyer to create an account on TFXCMarkets.com to receive the purported returns on her investments. *Id.* ¶ 18. She did so, believing the website to be a legitimate internet brokerage website. *Id.* TFXCMarkets.com was actually an elaborate “advance-fee” scam designed to steal her money and also controlled by Ezeh. *Id.* ¶ 20. TFXCMarkets.com told Dyer she needed to pay additional funds to “upgrade” her account so that she could make withdrawals. *Id.* ¶¶ 21, 24. Several of these communications came from Tayor, who identified himself as the CEO of TFXCMarkets.com and communicated with Dyer using a phone number with an Oakland, California area code. *Id.* ¶¶ 26–27.

On December 18, 2024, the Court permitted Dyer to serve third-party discovery on Binance and Bitcoin.com to uncover information about the accounts to which she deposited money at the request of the Doe defendants who perpetrated the scam. Dkt. No. 77. The discovery revealed Ezeh as the owner of a Binance account to which Dyer sent funds. *See* Dkt. No. 87-2. After efforts to serve Ezeh at his address failed, the Court permitted Dyer to serve him by email and publication. Dkt. Nos. 91, 110. Service was deemed effective as of January 5, 2026. Dkt. No. 121. The Clerk then entered Ezeh’s default after he failed to respond to the complaint or appear in this action. Dkt. Nos. 127–28.

On May 11, 2026, Dyer moved for default judgment against Ezeh. Dkt. No. 129. Judge Spero requested supplemental briefing addressing whether the Court has personal jurisdiction over Ezeh and heard oral argument on September 16, 2026. *See* Dkt. Nos. 133, 135, 137. He issued an R&R, and this case was reassigned to me. Dkt. Nos. 138–39.

**LEGAL STANDARD**

Under the Federal Rule of Civil Procedure 72, “[t]he district judge must determine de novo any part of the magistrate judge’s disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.” Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The district court need not review *de novo* those portions of an R&R to which neither party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The

United States District Court
Northern District of California

court's review is limited to the record of the proceedings before the magistrate judge, unless it grants an administrative motion to augment the record. *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 5930289, at *5 (N.D. Cal. Oct. 11, 2016) (citing Civil L.R. 72-3).

**DISCUSSION**

Dyer contends that this Court has personal jurisdiction over Ezeh; in the alternative, she seeks jurisdictional discovery to establish personal jurisdiction over Ezeh and Tayor. *See* Plaintiff's Supplemental Response ("Supp. Resp.") [Dkt. No. 135] at 13, 21–24. Judge Spero found that the record did not support personal jurisdiction over either defendant and that the requested discovery was not reasonably likely to establish personal jurisdiction. *See* R&R at 7–10.

Dyer disagrees with both conclusions and makes several specific objections. Objections at 2. First, with respect to personal jurisdiction, she disputes Judge Spero's finding that her claims did not arise out of the California-associated Binance activity. *Id.* at 3–4. Second, with respect to jurisdictional discovery, she asserts that additional Binance information obtained through discovery could establish personal jurisdiction. *Id.* at 2–3. Finally, she objects to dismissal of Ezeh and Tayor as premature without further discovery. *Id.* at 4–6.

**A. Personal Jurisdiction**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). But before assessing the merits of a default judgment, the court must confirm that it has personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims."[1] *Menken v. Emm*, 503 F.3d 1050, 1056–57

---

[1] Judge Spero concluded, and Dyer does not dispute, that "nothing in the record [] suggests that there is general jurisdiction over Ezeh." R&R at 7–8.

(9th Cir. 2007). For the court to have specific jurisdiction over a nonresident defendant, (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail himself of the privileges of conducting activities in the forum"; (2) the claim must "arise[] out of or relate[] to" the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with "fair play and substantial justice." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up). The plaintiff bears the burden of satisfying the first two prongs. *Id.*

Though Dyer does not specifically object to Judge Spero's finding that the first prong was not satisfied under the purposeful direction framework, she notes that the first prong may also be satisfied under the purposeful availment framework. *See* Objections at 4. Indeed, the Ninth Circuit recently held that purposeful availment, purposeful direction, "or some combination thereof," may satisfy the first prong, irrespective of whether the claim is a tort claim or a contract claim. *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1111 (9th Cir. 2025). Ultimately, both frameworks are intended to ensure that defendants are not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (internal quotations and citation omitted). The purposeful availment framework does not help Dyer, however, because the contacts on which she relies are too attenuated.

The purposeful availment test is satisfied where the defendant has deliberately engaged in significant activities within a state or created "continuing obligations" between himself and residents of the forum, such that he has manifestly availed himself of the privilege of conducting business in the forum. *Id.* at 1110. That is not the case here. Dyer relies on three entries from the Binance third-party production that she contends shows California-associated account activity: an entry with a location field of "United States Los Angeles" in connection with a "forgot password mailbox verification" event, Supp. Resp. at 12, and two transaction-related entries, with a location field of "United States San Francisco" and described as "C2C sellers release orders" and "C2C order V2 version interface," that may reflect transactions between Binance users. *Id.* at 15–16, 23. Dyer suggests that Binance's underlying records could show that these entries reflect deliberate transactions between Ezeh and California parties. Objections at 4. Even if they do, however,

these limited contacts are insufficient to establish purposeful availment. Such transactions are akin to "wire transfers or similar contacts," which "are generally insufficient, by themselves, to create personal jurisdiction." *S.H. Silver Co. Inc. v. David Morris Int'l*, No. 08-CV-03550-CRB, 2008 WL 4058364, at *4 (N.D. Cal. Aug. 28, 2008) (holding that defendant's "handful of calls and two wire transfers" did not establish purposeful availment); *see also Arce v. Ozone Cmty. Corp.*, No. 21-CV-00489, 2022 WL 4585825, at *6 (D. Idaho Sept. 29, 2022) (holding that defendant's sending of an invoice to an address in the forum and receipt of two payments from plaintiff residing in the forum were insufficient to show purposeful availment). The record does not reflect continuous contact or voluminous business communications suggesting purposefulness. *S.H. Silver*, 2008 WL 4058364, at *4.

Dyer's failure to satisfy the first prong precludes a finding of specific jurisdiction over Ezeh. Even so, because she objects to Judge Spero's finding on the second prong, I review that finding de novo. I also conclude that Dyer has failed to show that her claims in this case arise out of or relate to any of the Binance transactions. The portion of Dyer's brief that she claims refutes Judge Spero's finding does not explain how her claims must arise out of or relate to the Binance transactions. *See* Objections at 3; Supp. Resp. at 32–33. Rather, that section only discusses how proposed discovery could show that connection. Whether additional discovery is warranted is discussed in the next section, but on the current record, Dyer has not satisfied the second prong.

**B. Request for Leave to Pursue Additional Discovery**

"A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). A "mere hunch" that discovery might yield jurisdictional facts does not suffice. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 4th 852, 864–65 (9th Cir. 2022).

Dyer objects to Judge Spero's conclusion that the additional information she seeks from Binance is unlikely to alter the Court's jurisdictional analysis. She frames her request as "seek[ing] explanation of existing [Binance] records," and argues that the additional discovery may show that the account activity involved the assets alleged in this action and that Ezeh deliberately engaged in transactions with California counterparties. Objections at 3–4.

As an initial matter, Dyer's assertions that additional discovery may show "deliberate account activity or commercial transactions with California counterparties," or that the San Francisco-associated entries are traceable to the alleged assets, are insufficient to justify granting such discovery. At oral argument, Dyer contended that the account activity involved "proceeds of [her] money that [Ezeh] stole from [her]" based solely on the fact that the July 2023 transactions occurred after the alleged theft in January 2023. Dkt. No. 143 at 5. Such speculation, based on timing alone, is precisely the kind of "hunch" that is insufficient to warrant jurisdictional discovery.[2]

Moreover, Dyer has not explained "how this discovery would change the jurisdictional outcome in light of the problems with [her] theories" of personal jurisdiction discussed in the section above. *Tritt v. 3Commas Techs. OU*, No. 23-CV-04893-RFL, 2024 WL 3352884, at *1 (N.D. Cal. June 3, 2024). Additional explanation of the Binance records would not alter the fact that they only reflect attenuated contacts with the forum state, which are not the sort of "continuous relationships and obligations" that would support purposeful availment. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Nor would it show that "Ezeh, in making those transactions, caused harm that he knew was likely to be suffered in California," as required under the purposeful direction framework. R&R at 9. Accordingly, I find that dismissal of Ezeh from this case for lack of personal jurisdiction is appropriate.

Finally, dismissal of Tayor is also appropriate at this stage. Dyer's principal evidence of this Court's personal jurisdiction over Tayor is that the phone number he communicated with has an Oakland area code. Objections at 5. She concedes that this is insufficient to establish personal jurisdiction on its own but asserts that Coinbase records could identify Tayor. *Id.* In support of her argument, she moves to augment the record with Coinbase's April 2023 written objections to her third-party subpoena. Dkt. No. 141.[3] Under 28 U.S.C. § 636(b)(1), I may "receive further

---

[2] As Judge Spero noted during oral argument, Dyer has had three years to pursue this discovery. *Id.* at 4.

[3] She also moves to augment the record with written communications between her and the Hong Kong Police Force concerning its investigation of her transfers, but she does not explain how those communications relate to her theories of personal jurisdiction, let alone how those

evidence" in reviewing a party's objections to a magistrate judge's R&R. *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 930 (N.D. Cal. 2017). While I GRANT the motion to augment the record, the submitted materials do not alter my analysis. Coinbase's objections, which Dyer characterizes as showing that there are custodians and records that may identify Tayor, weigh against granting jurisdictional discovery. Objections at 6. Coinbase states that the user associated with the 3Jj66oX deposit address (the address that Tayor allegedly directed Dyer to send Bitcoin to) resides outside of the United States, such that Coinbase does not have a relationship with that user and cannot respond to Dyer's request for information about that user. Dkt. No. 141-2 at 5. In short, the objections make it even less likely that the requested Coinbase discovery will alter the jurisdictional outcome with respect to Tayor. Additionally, Dyer does not explain how the information she seeks would establish that Tayor's conduct was aimed at California for purposes of establishing personal jurisdiction.

**CONCLUSION**

For the foregoing reasons, I ADOPT Judge Spero's R&R in full. Dyer's motion for default judgment is DENIED. This case is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: November 13, 2026

William H. Orrick
United States District Judge

communications would alter my jurisdiction analysis.